UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENYA R.G., <br><br>        Plaintiff, <br><br>    v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br>        Defendant. | CASE NO. 3:24-CV-5402-DWC <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of her application for disability insurance benefits ("DIB").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating certain medical opinion evidence. Had the ALJ properly considered this evidence, Plaintiff's residual functional capacity ("RFC") may have included additional limitations, or the ultimate disability determination may have changed. The ALJ's error is, therefore, not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

Commissioner of Social Security ("Commissioner") for further proceedings consistent with this order.

I. **Factual and Procedural History**

In a partially favorable decision dated August 21, 2019, an ALJ found Plaintiff had been under a disability for the period of October 1, 2015, to March 2, 2019. Dkt. 7, Administrative Record ("AR") 303–41. Plaintiff filed a subsequent claim for DIB on August 26, 2019, alleging disability beginning on August 17, 2019. *See* AR 358–39. Her application was denied at the initial level and on reconsideration. AR 342, 357. She requested a hearing before an ALJ, which took place on April 15, 2021. AR 264–302, 393–94. Plaintiff was represented by counsel at the hearing. *See* AR 264. On June 2, 2021, the ALJ issued an unfavorable decision denying benefits. AR 19–43. The Appeals Council denied Plaintiff's request for review, and Plaintiff appealed to this Court. AR 1–7, 460–63, 1829–31. On February 21, 2023, this Court reversed the Commissioner's decision and remanded the case for further proceedings. AR 1832–57. In accordance with the Court's order, the Appeals Council vacated the June 2021 decision and remanded the case to the ALJ. AR 1858–62.

On November 16, 2023, the ALJ held another hearing, at which Plaintiff was also represented by counsel. AR 1763–96. On March 20, 2024, the ALJ issued an unfavorable decision finding Plaintiff was not under a disability from August 17, 2019, through June 30, 2021, the date last insured. AR 1735–62. Plaintiff again appealed to this Court. *See* Dkts. 1, 4.

II. **Standard of Review**

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211,

1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

### III.  Discussion

Plaintiff contends the ALJ erred in evaluating certain medical opinion evidence and Plaintiff's testimony about the severity of her symptoms. Dkt. 9 at 2. She contends the proper remedy for these errors is remand for an award of benefits. *Id.*

#### A.  *Medical Opinion Evidence*

Plaintiff argues the ALJ erred in assessing medical opinion evidence from treating physician Andrew Hamilton, M.D., and State agency medical consultants Merry Alto, M.D., and Robert Hander, M.D. Dkt. 9 at 13.

The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s). . . ." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs must consider every medical

opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* §§ 404.1520c(a), 416.920c(a).

The two most important factors affecting an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(a), 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). An opinion is more "supportable," and thus more persuasive, when the source provides more relevant "objective medical evidence and supporting explanations" for their opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2). ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

   1. <u>Andrew Hamilton, M.D.</u>

Plaintiff first challenges the ALJ's evaluation of medical opinion evidence from Dr. Andrew Hamilton, Plaintiff's primary care provider. Dkt. 9 at 13. The ALJ cited multiple opinions from Dr. Hamilton regarding Plaintiff's limitations in the form of medical evaluation forms and letters. *See* AR 701, 1250–51, 1252–54, 1262–64, 2025, 2140–42, 2144, 2146–48,

2152. Among these were two medical evaluations that Dr. Hamilton completed before the alleged disability onset date of August 17, 2019. *See* AR 1252–54, 1262–64.

On September 1, 2017, Dr. Hamilton completed a medical evaluation form, listing Plaintiff's conditions of pregnancy, fibromyalgia, asthma, and anxiety/depression. AR 1262–64. He stated these conditions limited her ability to work, look for work, or prepare for work, explaining, "Patient had chronic back pain problems (mainly fibromyalgia) which have been aggravated by pregnancy (now in 2nd trimester) so now has standard pregnancy work/exposure/recreation precautions in addition to back care limitations regarding avoidance of heavy lifting, pushing, pulling and avoiding prolonged standing and sitting." AR 1262. He indicated Plaintiff was limited to 11 to 20 hours per week of participation in work activities. *Id*. He wrote Plaintiff had lifting and carrying limitations and was able to lift 10 pounds maximum. AR 1263. Dr. Hamilton opined Plaintiff's condition was not permanent and would likely limit her ability to participate in work activities for nine months, but also commented, "May have to re-assess limitations due to chronic problems noted after current pregnancy/post pregnancy limitations no longer needed." AR 1263–64.

On February 14, 2019, Dr. Hamilton completed another medical evaluation form for Plaintiff. AR 1252–54. He listed Plaintiff's diagnoses of fibromyalgia, PTSD, anxiety, and depression. AR 1252. He described Plaintiff's physical limitations, stating, "Fibromyalgia symptoms can vary over time depending on anxiety/depression level and workload. When severe, [Plaintiff] has been advised to avoid heavy lifting/pushing/pulling [more than] 15 lbs. and to take frequent breaks to rest muscles." *Id.* He also stated Plaintiff's symptoms from her mental limitations would "vary over time depending on situation, medications, [and] frequency of psychotherapy." *Id.* He indicated Plaintiff was able to participate in work activities for "0 [hours

per week] (unable to participate)" because of these limitations. *Id.* He then indicated Plaintiff had limitations with lifting and carrying and was only able to lift up to 10 pounds. AR 1253. He opined Plaintiff's conditions were permanent and likely to limit her ability to work, look for work, or train to work. *Id.*

The first of Dr. Hamilton's medical opinions dated after Plaintiff's alleged onset date was a letter dated September 19, 2019. AR 701. Dr. Hamilton wrote that Plaintiff had been coping with "increasingly disabling and well documented Fibromyalgia and Polyarthralgia which have progressed despite medications and other treatment" for the previous six years. *Id.* He opined Plaintiff was "unable to maintain a level of physical activity needed for scheduled full or part-time work and at this time there is no expectation of improvement that would permit return to such work." *Id.* He referenced a "recent trial of return to work" lasting just over two weeks and resulting in termination of employment due to "a disabling flare up of muscle and joint aches in [Plaintiff's] neck, upper and lower back and upper legs." *Id.*

In November 2020, Dr. Hamilton completed a medical report, listing diagnoses of developmental reading disorder, depression, osteoarthritis in Plaintiff's knees, polyarthralgia, attention deficit hyperactivity disorder, fibromyalgia, anxiety disorder, chronic pain syndrome, and sciatica. AR 1250. He stated Plaintiff had "[m]ultiple painful/disabling physical and psychological symptoms" associated with these diagnoses that were extensively documented in the medical record. *Id.* He listed Plaintiff's medications and noted side effects of "sedation, difficulty concentrating, [and] balance difficulties." *Id.* Dr. Hamilton opined that working on a regular and continuous basis would cause Plaintiff's condition to deteriorate, explaining that Plaintiff had attempted to work in the past but had been unable to tolerate the work for more than one or two months. AR 1251. He indicated that Plaintiff would likely miss four or more days per

month due to her medical impairments if she attempted to work a regular 40-hour per week schedule. *Id.* He also opined Plaintiff would need to lie down for 30 to 60 minutes up to three times per day. AR 1250. He felt Plaintiff's prognosis was fair, writing that Plaintiff "is young and with adequate mental health support, new therapies and medications, patient may improve with decreased disability at some point in [the] future." AR 1251.

In a letter dated January 25, 2021, Dr. Hamilton wrote that Plaintiff had been his patient for more than seven years, over which time her back pain had been gradually getting worse. AR 2025. He stated her fibromyalgia had increased and did not seem to be improving despite treatment. *Id.* He opined she was "not able to work anymore due to aggravation of her muscle inflammation/fibromyalgia." *Id.* In support of this opinion, he cited Plaintiff's two-month stint as a janitor, stating that she had to leave her position because of increased back pain. *Id.*

Dr. Hamilton completed another medical evaluation on June 16, 2021. AR 2140–42. He indicated Plaintiff had physical, mental, and developmental issues that required special accommodations or considerations, listing her diagnoses of congenital learning disability, fibromyalgia, and recurrent depression. AR 2140. He explained that Plaintiff's learning disability caused "significant difficulty with reading comprehension, fluency, rate and spelling" and "[i]mpaired [her] ability to read documents, follow written instructions and fill[] out forms." *Id.* He indicated Plaintiff's physical conditions limited her ability to lift heavy objects, stand or sit for long periods of time, follow instructions, bend over, reach above, or make repetitive motions. *Id.* He found Plaintiff could participate in work activities for "0 [hours per week] (unable to participate)." *Id.* He stated Plaintiff's ability to lift and carry was "severely limited: unable to lift at least 2 pounds or unable to stand or walk." AR 2141. He wrote that Plaintiff's conditions were likely to permanently limit her ability to work but indicated a need for further assessment,

1 writing, "Resources to assess learning disability and mental health issues were difficult to access even pre-COVID and even more difficult during COVID. Referrals for these problems and to address fibromyalgia (rheumatology) would be helpful." AR 2142.

In a letter dated August 4, 2022, Dr. Hamilton wrote that he had been Plaintiff's primary care physician for over ten years and reported that a 2019 evaluation by a neuropsychologist had indicated a learning disability in reading and written expression, which caused Plaintiff to have difficulty reading, comprehending, and completing forms. AR 2144. He stated she often needed extra time to complete forms, especially complicated ones. *Id.*

On the same date, Dr. Hamilton completed a medical evaluation form. AR 2146–48. He indicated that Plaintiff had physical and mental limitations resulting from her congenital learning disability, fibromyalgia, and recurrent depression. AR 2146. He indicated these conditions limited Plaintiff's ability to lift heavy objects, stand or sit for long periods of time, follow instructions, bend over, reach above, or make repetitive motions. *Id.* He indicated Plaintiff could participate in work activities for "0 [hours per week]." *Id.* He stated Plaintiff's ability to lift and carry was "severely limited: unable to lift at least 2 pounds or unable to stand or walk." AR 2147. He also wrote that Plaintiff's conditions were likely to permanently limit her ability to work. *Id.* He repeated the need for further assessment of Plaintiff's learning disability, mental health issues, and fibromyalgia. AR 2148.

Dr. Hamilton's final opinion in the record is a letter dated March 9, 2023. AR 2152. He stated Plaintiff had been "attempting to cope with increasingly disabling and well documented Fibromyalgia and Polyarthralgia which have progressed despite medications and other treatment" over the previous nine years. *Id.* He also noted she was further limited by "a reading comprehension developmental disorder first diagnosed in December 2008 and confirmed by

repeat evaluation in December 2022." *Id.* He opined that "[s]ince 2019[,] she has been unable to maintain a level of physical activity and reading comprehension needed for schedule full or part-time work and at this time there is no expectation of improvement that would permit return to such work." *Id.* He again referenced the "trial of return to work" in 2019 that "failed due to a disabling flare up of muscle and joint aches in her neck, upper and lower back, and upper legs, resulting in termination of employment[.]" *Id.*

In the ALJ's decision on March 20, 2024, she found Plaintiff had the severe impairments of fibromyalgia; sciatica; mild arthritis of the lumbar spine; obesity; cervical and lumbar spine strain; headaches; schizoaffective disorder, depressive type; major depressive disorder; panic disorder without agoraphobia; bipolar disorder; post-traumatic stress disorder; and specific learning disorder with impairment in reading and written expression. AR 1741. After summarizing Dr. Hamilton's opinions, the ALJ explained that she found his opinions unpersuasive for the following reasons: (1) his opinion that Plaintiff was unable to perform work was an opinion on an issue reserved for the Commissioner, (2) his opinions were "somewhat contradictory," (3) his treatment notes did not support the extent of the opined limitations, and (4) his opinions were not consistent with the record as a whole. AR 1749–50.

First, the ALJ stated:

> Dr. Hamilton's opinion that the claimant is unable to perform work is an opinion on an issue reserved for the Commissioner. Accordingly, pursuant to 20 CFR 404.1520b(c)(3)(i), this statement is inherently neither valuable nor persuasive in deciding whether a claimant is or is not disabled.

AR 1749. Statements that an individual is or is not "disabled, blind, able to work, or able to perform regular or continuing work" are considered statements on issues reserved to the Commissioner because, if accepted, they would direct the Commissioner's decision on the ultimate issue of disability. *See* 20 C.F.R. § 404.1520b(c)(3). Accordingly, this evidence "is

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

inherently neither valuable nor persuasive to the issue of whether [an individual is] disabled or blind" and the ALJ "will not provide any analysis about how [they] considered such evidence in [their] determination or decision, even under § 404.1520c[.]" *Id.* § 404.1520b(c).

Under the regulations, the ALJ was permitted to discount simple statements that Plaintiff was unable to work as statements on issues reserved to the Commissioner. However, as summarized above, Dr. Hamilton provided medical opinion evidence beyond these statements, so this reasoning would not alone support the ALJ's rejection of Dr. Hamilton's opinions. Therefore, this finding is not supported by substantial evidence.

Second, the ALJ found Dr. Hamilton's opinions to be "somewhat contradictory," citing to the February 2019 opinion in which, the ALJ wrote, "Dr. Hamilton opines the claimant has no ability to engage in work activities, but she can perform sedentary work, and she could lift up to 15 pounds." AR 1749 (citing AR 1252–53). Although the evaluation form filled out by Dr. Hamilton is not the model of clarity, the ALJ's finding that these opinions are contradictory is not supported when Dr. Hamilton's responses in the evaluation form are read in context. In question three of the evaluation form, Dr. Hamilton responded in the affirmative to the question, "Does the physical, mental emotional, or developmental condition(s) listed above [in question two] limit the person's ability to work, look for work, or prepare for work?" AR 1252. After a space for further explanation, the question continued: "If yes, this person should be limited to the following participation limits per week," and gave options of 0 hours (unable to participate), 1 to 10 hours, 11 to 20 hours, 21 to 30 hours, or 31 to 40 hours. *Id.* Dr. Hamilton checked the box for 0 hours. *Id.* Question four asked, "Does this person have any limitations with lifting and carrying?" AR 1253. Dr. Hamilton checked the box for yes. *Id.* The question continued, "If yes, this person has the following limitations," and Dr. Hamilton checked the box next to the

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

response, "Sedentary work: Able to lift 10 pounds maximum and frequently lift or carry such articles as files and small tools. A sedentary job may require sitting, walking and standing for brief periods." *Id.*

In context, it appears the reference to "sedentary work" was specific to Plaintiff's limitations with lifting and carrying, rather than an overall assessment of her capabilities. That is, Dr. Hamilton was opining that Plaintiff's lifting and carrying capabilities were equivalent to those required for sedentary work, not that she could meet all the requirements to perform sedentary work. Nor is Dr. Hamilton's handwritten comment that Plaintiff had been advised to avoid lifting over 15 pounds inconsistent with this assessment, given that the next most restrictive option stated that the individual was able to lift 20 pounds. *See* AR 1253. Accordingly, the ALJ's finding that these statements were contradictory is not supported by the record. The ALJ cited to no other examples in support of this finding. Without any other specific citations to the record, the Court cannot say that this finding is supported by substantial evidence.

Third, the ALJ wrote that Dr. Hamilton's treatment notes did not "support the extent of the limitations he opined:"

> His physical exam findings show obesity and some tenderness to palpation over the chest wall and spine, some reduced range of motion in the lumbar spine, and some positive straight leg raises bilaterally. However, he noted the claimant was alert, cheerful, in no acute distress, and sitting comfortably. He noted the claimant's Tylenol with codeine managed her pain (Ex. C15F/19; C26F/78, 82; C49F/203, 247). While he was rendering some of these disabling opinions, Dr. Hamilton was indicating in his treatment notes the claimant was able to get out of the chair with no obvious pain, she had no obvious impairment with movement, and she was playing with her 20-month-old child, and lifting her (Ex. C49F/269, 271, 273).

AR 1749–50.

The first visit note cited by the ALJ, dated February 12, 2020, documented chronic pain and recent new pelvic pain of uncertain cause, though he noted fibromyalgia was likely a factor.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11

1  AR 1170. Plaintiff had also been seen at an emergency room four days before "due to 10 days of
2  chest pain, bilateral upper anterior chest wall pain radiating around back to between scapulae."
3  *Id.* On examination, Dr. Hamilton found "[l]ocally tender anterior chest wall [at] about 3rd rib,
4  mid sternum at about 3rd rib level and tender upper back at about T3." *Id.* On December 4, 2020,
5  Dr. Hamilton noted "markedly positive [straight leg raise] Left leg, slight positive [right] leg.
6  Tenderness low back L4-S1 level and bilateral paraspinal muscles same levels, tender bilateral
7  [sacroiliac joint] and upper buttocks. Pain with side to side low back flexion and with extension,
8  only able to bend forward about 45 [degrees]." AR 1497. At an August 25, 2020, appointment,
9  Dr. Hamilton wrote Plaintiff was "[u]sing 3/day Tylenol with codeine to manage chronic
10 Fibromyalgia pain[.]" AR 7052. However, the cited records still note complaints of pain and
11 indicate Plaintiff's providers intended to taper Plaintiff off this medication due to a history of
12 opioid dependence. AR 1170, 1493, 1497, 7052. At a subsequent visit on April 7, 2021, Dr.
13 Hamilton noted Plaintiff had increased her use of this medication and had also been prescribed
14 gabapentin for pain management. AR 7008.

15      Although some of the records cited by the ALJ note that Plaintiff was alert, cheerful, and
16 in no acute distress (*see* AR 1170, 1497, 7008), the ALJ does not explain how these findings
17 conflict with Dr. Hamilton's opined limitations or the records documenting Plaintiff's complaints
18 of chronic pain. Without such explanation, the Court cannot review the ALJ's reasoning for
19 discounting Dr. Hamilton's opinions on this basis and thus cannot say this finding is supported
20 by substantial evidence. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require
21 the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we
22 may afford the claimant meaningful review of the SSA's ultimate findings.").

23
24
ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12

The ALJ cited to a visit note from September 16, 2019, for a follow-up concerning Plaintiff's pelvic pain. AR 7078. Dr. Hamilton noted Plaintiff was experiencing "bothersome pain (likely worse due to fibromyalgia)." *Id.* On examination, he wrote Plaintiff was "[a]lert, in no apparent distress, ambulates, gets out of chair with no obvious pain, [vital signs] normal." *Id.* The ALJ then cited to two treatment notes dated November 7, 2019, and December 3, 2019, containing identical comments describing Plaintiff's presentation: "Today: patient alert, cheerful, in no apparent distress, 20 month old child with her, patient has no obvious impairment with movement, playing with child, lifting her, etc." AR 7074, 7076.

The ALJ implied these findings conflicted with Dr. Hamilton's opinion from around the same time that Plaintiff's limitations precluded full-time work. *See* AR 701. But the ALJ did not address Dr. Hamilton's repeated opinions that Plaintiff's symptoms varied and became aggravated over time with activity. *See* AR 701, 1251–52, 2025, 2152; *see also Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) ("[T]he symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'") (quoting Social Security Ruling 12-2P, 2012 WL 3104869, at *6 (Jul. 25, 2012)). In light of these comments and Plaintiff's diagnosis of fibromyalgia, these unremarkable observations do not appear to conflict with Dr. Hamilton's opined limitations. *See Reinertson v. Barnhart*, 127 F. App'x 285, 290 n.2 (9th Cir. 2005) (unpublished) ("One who suffers from fibromyalgia, a condition marked by 'chronic pain throughout the body,' is not necessarily in 'acute distress.'") (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). Without further explanation, the Court cannot say the ALJ's finding that Dr. Hamilton failed to support his opinions is supported by substantial evidence in the record.

1    Fourth and finally, the ALJ also found Dr. Hamilton's opinions "not consistent with the
2    record as a whole, including relatively benign imaging of the cervical and lumbar spine, good
3    range of motion in the extremities, mostly normal motor strength throughout, mostly intact
4    sensation, and normal deep tendon reflexes." AR 1750. The Ninth Circuit has cautioned against
5    relying on physical measures to discount fibromyalgia claims. *See Benecke*, 379 F.3d at 594
6    ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such
7    measurement.") (cleaned up); *Revels*, 874 F.3d at 663 ("[A] person with fibromyalgia may have
8    muscle strength, sensory functions, and reflexes that are normal.") (cleaned up). Again, the ALJ
9    failed to explain how these normal objective findings were inconsistent with Dr. Hamilton's
10   opinions that Plaintiff's symptoms varied and became aggravated over time with activity.
11   Accordingly, this finding is not supported by substantial evidence.
12   For the above reasons, the Court concludes the ALJ failed to properly evaluate Dr.
13   Hamilton's opinions. Accordingly, the ALJ erred. Had the ALJ properly evaluated this evidence,
14   the ultimate disability determination may have changed, or the RFC may have included
15   additional limitations. Accordingly, the error is not harmless and require reversal.

    2. Merry Alto, M.D., and Robert Hander, M.D.

17   Plaintiff also argues the ALJ erred in evaluating the prior administrative findings of State
18   agency medical consultants Merry Alto, M.D., and Robert Hander, M.D. Dkt. 9 at 16–17.
19   Because the Court finds harmful error in the ALJ's consideration of Dr. Hamilton's opinions, the
20   Court need not address the other challenged medical opinion evidence.
21       B. *Remedy*
22   Plaintiff argues the proper remedy for the ALJ's errors is remand for an immediate award
23   of benefits. Dkt. 9 at 16. The Court may remand a case "either for additional evidence and
24

findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595 (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Under this "credit-as-true" test, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292; *Garrison*, 759 F.3d at 1020.

An ALJ's errors are relevant only to the extent they impact the underlying question of the Plaintiff's disability. *Strauss v. Comm'r of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* Therefore, even if the "credit-as-true" conditions are satisfied, a court should nonetheless remand the case if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The Court concludes Plaintiff has not shown that the record is free from important and relevant conflicts or that no issues remain that must be resolved. Because there are outstanding issues which must be resolved concerning Plaintiff's functional capabilities and her ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate.

C.  *Remaining Issues*

Plaintiff further contends the ALJ failed to properly evaluate her testimony about the severity of her symptoms. Dkt. 9 at 2. As noted above, the Court concludes the ALJ committed harmful error in assessing the medical opinion evidence and remand for further proceedings is appropriate. Due to this error, the ALJ must re-evaluate all the medical evidence on remand. Because Plaintiff may be able to present new evidence and new testimony on remand and the ALJ's reconsideration of the medical evidence may impact the assessment of Plaintiff's testimony, the ALJ must also reconsider this evidence on remand.

IV.   **Conclusion**

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled from the alleged onset date of August 17, 2019, to the date last insured of June 30, 2021. Accordingly, Defendant's decision to deny benefits for this period is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 12th day of December, 2024.

David W. Christel
United States Magistrate Judge